IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DORIS WILKINS                                                                                    PLAINTIFF

VS.                                            NO.  5:05CV00030 WRW

INTERNATIONAL PAPER COMPANY                                                DEFENDANT

### ORDER

Pending is Defendant International Paper Company's Motion for Summary Judgment,[1] to which Plaintiff Doris Wilkins responded.[2] Also pending are Defendant's Motion to Strike[3] and Plaintiff's attorney's Motion to Withdraw, and Motion for a Continuance.[4]

This is a race, sex, and age discrimination case brought under the Age Discrimination in Employment Act ("ADEA"); 42 U.S.C. § 2000 *et seq.* ("Title VII"); and, 42 U.S.C. § 1981. Plaintiff Doris Wilkins ("Wilkins") is a 44 year old African-American female who worked for Defendant International Paper Company ("International Paper") from 1986 to September 2003, when her job was eliminated. Wilkins alleges that she was subjected to a racially hostile work environment beginning in 2000 through 2003. Wilkins also alleges that she was terminated because of her age, sex, and race.

---

[1] Doc. No. 25.

[2] Doc. No. 34.

[3] Doc. No. 39.

[4] Doc. No. 42.

1

In its Motion, International Paper argues that Wilkins's age discrimination claim was untimely; she failed to exhaust her Title VII claim; and she cannot make out a *prima facie* case of age or race discrimination. In her response, Wilkins concedes that she did not exhaust the gender claim.

**I. Background**

Wilkins worked for International Paper for over 18 years and preformed "virtually every job in the quality control area."[5] In February 1995, Wilkins went into the engineering program at International Paper,[6] and was promoted to supervisor in the quality assurance laboratory. George Wiley was one of Wilkins's supervisors during the time she worked in the lab. In 2002, Wilkins was transferred to another position as a quality engineer for coated papers.[7] In September 2003, as part of a reduction in force, Wilkins's quality engineer job was eliminated, and she was terminated.

At the time of Wilkins's termination, Gary Castel was the most senior person in the quality assurance department, she was second, and Glen Brand was third. Castel was the only employee, of the three quality engineers, whose job was not eliminated.[8] Glen Brand was also a quality engineer, and, despite his seniority, he was terminated. Wilkins alleges that it is unwritten company policy to consider seniority within a department as a whole, before selecting employees for elimination. In this case, Wilkins's seniority was ignored and she was terminated

---

[5] Doc. No. 34, Pl. Ex.1 (affidavit of Doris Wilkins).

[6] Doc. No. 25, Def. Ex.1 at 24 (deposition of Doris Wilkins).

[7] *Id.* at 25.

[8] *Id.* at 40-41.

based on her job category.[9]  Wilkins states that she was told by human resources that her termination violated company policy when her seniority was overlooked.[10]  She believes that she was moved out of the quality assurance lab and made a quality engineer so that she could be terminated, but she admits that she has no evidence to support this belief.[11]

Wilkins maintains that she had more experience and more seniority than two employees who remained in the quality assurance department:  Eric Kincaid, a 31 year old white male, who was managing the department; and Sarah Pates, a 35 year old black female, who was supervising the lab.

International Paper counters that it does not have policies which require the termination of the most junior employees in each department.  Instead, International Paper considers seniority when it reduces the number of employees who are preforming the same or similar jobs.[12]

In addition to alleging discriminatory termination, Wilkins asserts that she was harassed, between 2000 and 2003, because of her race.  She alleges that, during this time period, she was subjected to a hostile work environment by George Wiley ("Wiley"), Tarsha Montgomery ("Montgomery"), John Jordan ("Jordan"), and John Marler ("Marler").

---

[9]*Id.* at 41-42.

[10]Doc. No. 34, Pl. Ex. 1 at 2.

[11]Doc. No. 25, Def. Ex.  1 at 171-72.

[12]Doc. No. 26, Statement of Facts, ¶ 44.

Wilkins believes that Wiley created a hostile work environment when he: (1) threatened to find some "dirt" on her;[13] (2) gave her an unfair performance evaluation;[14] (3) refused to give her supplies or other assistance;[15] (4) assigned her a greater workload;[16] and, (5) when he undermined her relationship with her subordinates and co-employees.[17] Jordan allegedly harassed Wilkins by mumbling that, "she was messing with the big dogs," and that she "must be on drugs." Wilkins alleges that Montgomery engaged in harassing conduct by directing an employee to ignore Wilkins's instructions during a testing procedure, which compromised the results.[18] Wilkins believes that Marler took part in the harassment when he allegedly conspired with Montgomery to interfere with the testing process. Wilkins also believes that Marler has a problem with African-American women which was apparent when Marler edited her reports. According to Wilkins, Marler also conspired with Wiley to deprive her of work supplies.[19] There is no evidence that these individuals made racially derogatory remarks to Wilkins.

Wilkins was terminated on September 26, 2003, and she filed a charge with the EEOC on October 21, 2004 -- over a year later. Her charge alleged age discrimination and did not mention gender or race. Wilkins argues that International Paper led her to believe that her termination

---

[13] Doc. No. 25, Def. Ex. 1 at 54-55.

[14] *Id.* at 55 and 116.

[15] *Id.* at 63-66 and 97-98.

[16] *Id.* at 69-70.

[17] *Id.* at 72-74 and 93-94.

[18] *Id.* at 120-121.

[19] *Id.* at 128-130.

was being investigated, and, because of this, she waited to file a charge with the Equal Employment Opportunity Commission ("EEOC").

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[20]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[21]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[22]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[23]  I must view the facts in the light most favorable to the party opposing the motion.[24]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record

---

[20]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R.Civ. P. 56.

[21]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[22]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[23]*Id.* at 728.

[24]*Id.* at 727-28.

in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[25]

A case founded on speculation or suspicion is insufficient to survive summary judgment motion.[26] Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[27] Conclusory affidavits, standing alone, cannot create a genuine issue of material fact.[28]

### III. Authority

#### A. Statute of Limitations and Exhaustion

Federal law requires that, before a plaintiff may sue an employer under the ADEA, she must file a charge with the EEOC within 180 days of the "alleged unlawful practice."[29] This administrative deadline is not a jurisdictional prerequisite -- instead, it is treated like a statute of limitations.[30] If a plaintiff fails to file a timely charge, the lawsuit is barred unless she can demonstrate that the limitations period is subject to equitable modification, such as waiver,

---

[25] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[26] *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir. 2003).

[27] *Anderson*, 477 U.S. at 248.

[28] *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).

[29] 29 U.S.C. § 626(d).

[30] *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *DeBrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir. 1986).

estoppel, or tolling.[31] The doctrine of equitable estoppel comes into play when "the employee's failure to file in a timely fashion is the consequence of either a deliberate design, or of actions that the employer should have clearly understood would cause the employee to delay filing his charge."[32] The doctrine of equitable estoppel is invoked when a plaintiff is aware of his ADEA cause of action, but is "lulled or tricked into letting the EEOC filing deadline pass because of some employer misconduct."[33]

Title VII establishes an administrative procedure which a employee must follow before filing a lawsuit in federal court.[34] Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC with the first opportunity to investigate discriminatory practices and enables it to perform its roles of accomplishing voluntary compliance and promoting conciliatory efforts. To exhaust administrative remedies, an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue.[35] Allowing a complaint to make allegations that were not made in the EEOC charge would frustrate the EEOC's investigatory and conciliatory role, and would deprive the employer of fair notice.[36]

---

[31]*Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir. 1994); *Heideman v. PFL*, 904 F.2d 1262, 1265 (8th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991).

[32]*Dring v McDonnell Douglas Corp.*, 58 F.3d 1323, 1327-29 (*quoting Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358-59 (8th Cir. 1984)).

[33]*Id.* at 1329.

[34]*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).

[35]42 U.S.C. § 2000e-5(b), (c), and (e).

[36]*Williams*, 21 F.3d at 223 (*quoting Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985)).

**B.  *Prima Facie* Case in Reduction in Force Cases**

To make out a *prima facie* case of age discrimination, Wilkins must show that she was at least forty-years old, she suffered an adverse employment action, she was meeting her employer's reasonable expectations at the time of the adverse employment action, and she was replaced by someone substantially younger.[37]

The Eighth Circuit has held that a five-year age difference is insufficient to establish the "substantially younger" element of the *prima facie* case,[38] and voiced doubt that a nine-year age difference is sufficient to meet this element.[39]

Wilkins alleges that her reduction in forces termination was discriminatory.  This requires the production of additional evidence to meet a *prima facie* case.  In cases involving a reduction in force, rather than a replacement of an older employee with a younger employee, Wilkins must establish that:  (1) she is within the protected age group; (2) she met the applicable job qualifications; (3) she suffered an adverse employment action; and, (4) *there is some additional evidence that age was a factor in the employer's action.*[40]

The *McDonnell Douglas*[41] burden-shifting framework applies to motions for summary judgment in cases brought under § 1981 where there is no direct evidence of discrimination.[42] Under this framework, Wilkins must first establish a *prima facie* case of discrimination before

---

[37]*Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005).

[38]*Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997).

[39]*Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003).

[40]*Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994) (emphasis added).

[41]*McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[42]*Roxas v. Presentation College*, 90 F.3d 310, 315 (8th Cir. 1996).

the burden of production shifts to International Paper to show a legitimate, nondiscriminatory reason for its action; and, if such a reason is shown, the burden of production shifts back to Wilkins to establish that the reason offered by International Paper is a mere pretext.[43]

To establish a *prima facie* case of race discrimination in a reduction in force case under § 1981, Wilkins must produce additional evidence of discrimination, by showing that: (1) she was within a protected group; (2) she met applicable job qualifications; (3) she was discharged; and, she must (4) *produce some additional evidence that race was a factor in her termination*.[44]

### C. Hostile Work Environment

Claims alleging a hostile work environment under § 1981 are analyzed using the same standards as Title VII claims.[45] To establish a race-based hostile work environment claim, Wilkins must show: (1) she was a member of a protected group; (2) she was subjected to unwelcome race-based harassment; (3) the harassment was because of her membership in the protected group, and (4) the harassment affected a term, condition, or privilege of her employment.[46]

The Supreme Court has made it clear that for a hostile work environment claim to succeed, the conduct "must be so extreme that it amounts to a change in the terms and conditions of employment."[47] For harassment to affect a condition of employment, the conduct

---

[43]*Id.* at 315-16.

[44]*Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 483-84 (8th Cir. 1997) (emphasis added).

[45]*Greer v. St. Louis Reg'l Med. Cent.*, 258 F.3d 843, 847 (8th Cir. 2001).

[46]*Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003).

[47]*Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998).

must be severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim."[48]

Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment.[49] In determining whether sufficient evidence of a hostile work environment claim is presented, the surrounding circumstances should be considered -- "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."[50] To satisfy the "high threshold of actionable harm," Wilkins has to show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult."[51] Conduct and comments which cause offensive feelings between employees, does not sufficiently affect the conditions of employment to produce § 1981 liability.[52] This same standard is applied to the conduct of supervisors.[53]

**IV. Discussion**

---

[48]*Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998).

[49]*Faragher*, 524 U.S. at 786-88.

[50]*Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002).

[51]*Id*. at 934 (*quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

[52]*Harris*, 510 U.S. at 21.

[53]*Mitchell v. City of Dumas*, *Ark.*, 187 Fed. Appx. 666 (8th Cir. 2006) (Supervisor's actions of accusing city employee of stealing city property and spying on him, and supervisor calling employee "Bubba" on several occasions, were not severe and pervasive enough to create hostile work environment on the basis of race.); *Miller v. Coca-Cola Enterprises, Inc.*, 178 Fed. Appx. 583 (8th Cir. 2006) (Comments by supervisor that African-American employees had attitude and milked the clock, and other derogatory remarks were insufficient to constitute racial harassment, because the comments were not so severe and pervasive as to alter the conditions of employment).

As stated, this is a reduction in force claim.  Wilkins's termination resulted from International Paper's efforts to reduce salary and administrative costs.  As part of this process, two quality engineer positions were eliminated -- Wilkins held one of those positions.  So, after 18 years with the company, Wilkins lost her job.  She alleges a more pernicious motivation for her termination -- race, gender, and age discrimination.

### A.  Gender Claim

The gender discrimination allegation was never raised with the EEOC -- it was raised for the first time in the Complaint.  Wilkins concedes that she failed to exhaust her administrative remedies with respect to the gender claim.  Filing a claim with the EEOC before going to federal court, is central to Title VII's scheme.  Allowing a complaint to make allegations that were not made in the EEOC charge would undermine the EEOC's investigatory and conciliatory role, and would deprive the employer of fair notice of the charge.  Wilkins offers no justifiable reason for her failure.  Because of this, Wilkins gender claim is barred.

### B.  Age Claim

Wilkins filed her age discrimination charge with the EEOC over a year after she was terminated.  Wilkins asserts that she is entitled to equitable relief because of International Paper's actions.  The doctrine of equitable estoppel is applied in such cases when there is evidence that the employer committed a deliberate act that it knew would cause the employee to wait.  Wilkins testified that the human resource manager told her that her termination would be investigated, but she offers no other evidence that International Paper acted in a manner inconsistent with its decision to fire her.  There is not enough evidence creating a fact question as to whether International Paper caused Wilkins to wait too long.

Even assuming that the charge was filed in time, Wilkins fails to make a *prima facie* case for age discrimination. Wilkins was terminated as a result of a reduction in force, so she must produce some additional evidence that age was a factor. Wilkins did not produce evidence creating a jury question that age played a part in her selection for termination. The evidence relied on by Wilkins is that two younger employees with less seniority -- Eric Kincaid and Sarah Pates ("Pates") -- were allowed to keep their jobs, while she was fired. This does not adequately show that age was a factor in the decision. These two employees did not preform the same job as Wilkins. To lower costs, International Paper decided to eliminate her job -- not the jobs held by the other two.

Kincaid was department manager at the time Wilkins left International Paper. Wilkins asserts that, because of her seniority, she should have been promoted, and Kincaid should have been chosen for termination. Declining to fire the department manager so that Wilkins could have his job, does not constitute age discrimination. Wilkins is asking for preferential treatment, not equal treatment. In the case of Kincaid, there is inadequate evidence showing that Kincaid kept his job because he was younger than Wilkins. Pates is only nine years younger than Wilkins. This age difference isn't "substantial" enough to raise an inference of discrimination.[54]

International Paper maintains that it is not company policy to bump employees who are holding jobs in order to keep employees whose jobs are eliminated. Wilkins produced no evidence that this policy was applied in a discriminatory manner.

**C. Race Claim**

For the same reasons, Wilkins's race claim fails. In a reduction in force claim, Wilkins must furnish additional evidence of racial bias to meet her *prima facie* burden. In support of her

---

[54] *Girten*, 337 F.3d at 982.

race case, Wilkins asserts that she was fired, while Kincaid and Pates were not.  Wilkins argues that she should have been given Pates's job, because she had performed the job in the past and was more experienced.  Pates is African-American, and International Paper's decision to keep Pates cannot be found to be motivated by racism.  As stated, Kincaid was a department manager -- there is no evidence that the decision to keep its department manager was motivated by racial discrimination.

### D.  Hostile Work-Environment Claim

Wilkins also falls short with respect to her hostile work-environment claim.  There was no evidence that Wilkins was subjected to racial insults, and the evidence is too slim to create an inference that the alleged conduct of Wiley, Jordan, Montgomery, and Marler poisoned the work atmosphere.  Wilkins fails to produce sufficient evidence to raise an inference that these individuals conducted themselves in a manner that changed the terms and conditions of her work.

Jordan allegedly made two comments to Wilkins which offended her.  Neither comment was directed at her race.  Jordan's alleged conduct was neither pervasive nor offensive enough to create a hostile work environment.  Montgomery is an African-American who, according to Wilkins, conspired to undermine the outcome of a test Wilkins conducted.  Wilkins has no significant evidence of this conspiracy -- she is speculating.  The evidence of Marler's harassment is also speculative.  She speculates that Marler edited her reports because of racial bias, and she speculates that Marler conspired with others to frustrate her work productivity.  Wilkins's speculative testimony does not create an inference that Marler engaged in racially hostile conduct.

Finally, Wilkins concentrates on the conduct of Wiley, her direct supervisor when she worked in the lab.  She accuses Wiley of depriving her of needed supplies, assigning a disproportionate workload, and working to undermine her reputation with her subordinates and co-employees.  However, she gives no concrete examples in support of her conclusory testimony that her treatment was harsher, as compared with her co-workers.  Wilkins's strongest allegation against Wiley is that he threatened to unfairly scrutinize her work.  However, there is no evidence that he carried out this threat, or that her performance evaluations were unfair and discriminatory.      In sum, Wilkins does not raise an inference that she was a victim of frequent, unrelenting discriminatory conduct, motivated by racial animus.  Wilkins did not raise an inference that her workplace was "permeated with discriminatory intimidation, ridicule, and insult."[55]

## V. Conclusion

Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's age, race, and gender actions are Dismissed.  Defendant's Motion to Strike is DENIED as MOOT; Plaintiff's Attorney's Motion to Withdraw is GRANTED, and the Motion for a Continuance is DENIED as MOOT.

IT IS SO ORDERED this 18th day of December, 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[55]*Harris*, 510 U.S. at 21.